**In the Matter of CROSS COUNTY SQUARE ASSOCIATES,**
Debtor.

**CROSS COUNTY SQUARE ASSOCIATES,**
Plaintiff,

v.

**BROOK SHOPPING CENTERS, INC., Defendant.**

**Bankruptcy No. 91 B 20589.**
**No. 91 Adv. 6205.**

United States Bankruptcy Court,
S.D. New York.

Nov. 14, 1991.

Plunkett & Jaffe, P.C., White Plains, N.Y. (Joel H. Sachs, of counsel), for debtor.

Edward J. Schwarz, New York City, for defendant.

## DECISION ON MOTION FOR A PRELIMINARY INJUNCTION

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The Chapter 11 debtor, Cross County Square Associates, has moved for a preliminary injunction in an adversary proceeding for a permanent injunction with respect to a fence installed by the respondent between the two adjacent shopping centers operated by the debtor and the respondent. The debtor argues that the fence in question is a "spite fence" which was erected along the boundary of the respondent's shopping center. The fence blocks a pathway on the debtor's shopping center near a roadway easement on the respondent's adjacent shopping center, thereby preventing the free flow of pedestrian traffic from both shopping centers.

The respondent argues that the issue of the preliminary injunction sought by the debtor was previously decided by a state court on December 20, 1988, when it denied the debtor's motion for a preliminary injunction involving another fence erected by the respondent on a different portion of the boundary between the two shopping centers. The state court's denial of the preliminary injunction sought by the debtor with respect to the first fence was based on the fact that the court found that there was some question regarding the debtor's likelihood of success on the merits and an insufficient showing of irreparable injury.

### FINDINGS OF FACT

1. On April 23, 1991 the debtor, Cross County Square Associates, filed with this court a petition for relief under Chapter 11 of the Bankruptcy Code and was continued in operation and management of its business as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. The debtor is the owner and operator of a retail shopping center, known as Cross County Square Shopping Center, located

adjacent to Central Park Avenue in Yonkers, New York.

3. The respondent, Brook Shopping Center, Inc., is the owner and operator of a retail shopping center, known as Cross County Shopping Center, also located adjacent to Central Park Avenue in Yonkers, New York.

4. The retail shopping centers owned and operated by the debtor and the respondent are directly adjacent to each other. Respondent's southern and western boundaries are abutted by the debtor's shopping center.

5. In 1965, the respondent's predecessor in interest, County Dollar Corporation ("Dollar"), asked the debtor's predecessor in interest, FFH Corporation ("FFH") to grant Dollar an easement across the northwest corner of the FFH property upon which Dollar proposed to construct a portion of a roadway later known as South Drive, connecting Central Park Avenue, a major highway, with the respondent's shopping center. FFH agreed to grant the easement on condition that Dollar pay $60,790.00 to FFH and that FFH grant to Dollar a mutual easement so that customers of both shopping centers might pass between the shopping centers through the area known as the Easement Area, which was located between the common boundary of the two shopping centers.

6. On December 30, 1965, the debtor's predecessor in interest, FFH, entered into a written Grant of Mutual Easement (the "Grant") with the respondent's predecessor in interest, Dollar. In paragraph number one of the Grant, FFH granted to Dollar, its successors and assigns, a non-exclusive easement on certain property owned by FFH, referred to as the Easement Area, solely for the purpose of ingress to and egress from Dollar's shopping center, as described in Schedule A annexed to the Grant.

7. Paragraph number three of the Grant is relevant to this proceeding with regard to the fence dispute and provides as follows:

3. DOLLAR shall be permitted to erect two signs directing the flow of traffic on or about the roadways and approaches contained on the Easement Area, said signs not to exceed 5 feet in height and 20 feet in width, but shall *not erect thereon* any other fence, structure or other obstruction leading from or to the properties described in Schedules "A" and "B" and any public streets or highways adjacent thereto.

Grant of Mutual Easement, at ¶ 3 (emphasis added) (attached as Schedule A to *Affidavit in Opposition to Debtor's Motion for Preliminary Injunction*).

8. The proscription in paragraph number three against erecting fences "thereon" has reference to the Easement Area. Throughout the Grant the focus of the parties is on the Easement Area, including the responsibility of the parties for the payment of real estate taxes, assessments, public liability and property damage insurance and all other like charges relating specifically to the Easement Area. The Grant is silent as to what the parties may do or not do with respect to the remainder of their common boundary not covered by the Easement Area.

9. The respondent has extended a chain link fence on the common boundary not in the Easement Area along the line between the two shopping centers so that the only portion of the boundary line that the chain link fence will not block is a small area located near the highway known as Central Park Avenue. At this point, there is a stairway adjacent to the Easement Area which leads from the respondent's shopping center, which is on a lower level of ground, to the debtor's shopping center, which is on a higher level. The stairway is in two sections and it contains approximately fifteen steps. It is located near the curve in South Drive at the point where vehicles may turn off from the Central Park Avenue highway into the Easement Area at the beginning of South Drive which separates the two shopping centers. The chain link fence which the respondent erected does not block pedestrians from using the stairs near the highway in order to move more freely between the two shopping centers.

10. The chain link fence which the respondent erected blocks the use of a gravel pathway or ramp that leads from South Drive to the debtor's shopping center and which is located about three hundred and fifty feet from the lower portion of South Drive covered by the Easement Area.

11. Customers of both shopping centers testified that they are members of a senior citizens organization and protested the erection of the fence blocking the gravel pathway leading from the respondent's shopping center to the debtor's shopping center. They prefer not to have to use the stairs near the highway for health and safety reasons. The senior citizens do not like having to climb stairs to get to the debtor's shopping center and do not enjoy having to walk farther to the beginning of both shopping centers to reach the stairs. More importantly, they testified that for safety reasons they do not want to walk towards the highway to climb the stairs because the curve in South Drive at that point obscures their vision of the highway and also makes it difficult for drivers of fast moving cars which turn off the highway into South Drive to see pedestrians crossing South Drive from the respondent's shopping center who use the stairs to reach the debtor's shopping center.

13. There was testimony that senior citizens, who travel to the shopping centers by bus, are let off at the bus stop in front of the respondent's shopping center. Therefore, if they intend to go directly to the debtor's shopping center they have to cross South Drive near the curve close to the adjacent highway to use the stairway near the curve in South Drive. For health and safety reasons they are reluctant to cross South Drive at this location and prefer to use the gravel pathway to the debtor's shopping center, which is located off South Drive and more than three hundred and fifty feet beyond the dangerous curve.

14. A store operator in the debtor's shopping center testified that his business is off by twenty-five percent since the respondent erected the fence which blocks off the gravel pathway leading from South Drive into the debtor's shopping center.

15. The respondent offered no explanation or reason for erecting the fence which blocks off the gravel pathway leading from South Drive into the debtor's shopping center, preventing customers of the shopping centers from using the pathway, rather than the stairs near the highway, to move back and forth between the two shopping centers.

## DISCUSSION

■ Neither side submitted any briefs as required by Local Bankruptcy Rule 13(b). Their failure to comply with this Local Rule is sufficient ground for the denial or the granting of the motion by default. However, an expeditious decision on the merits is necessary to resolve a question which is also of interest to the public at large. Accordingly, the court will proceed without further guidance from counsel as to the applicable law.

To obtain a preliminary injunction, the moving party must establish: (1) that it will suffer irreparable harm and (2) either (a) likelihood of success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping in favor of the moving party. *JSG Trading Corp. v. Tray–Wrap, Inc.,* 917 F.2d 75, 79 (2d Cir.1990); *Church of Scientology International v. The Elmira Mission of the Church of Scientology,* 794 F.2d 38, 41 (2d Cir.1986); *Power Test Petroleum Distributors v. Calcu Gas,* 754 F.2d 91, 95 (2d Cir.1985).

■ Initially, it should be noted that the 1988 state court decision denying the debtor's application for a preliminary injunction with respect to the respondent's erection of a fence at a different location on the boundary line between the two shopping centers does not have a preclusive effect as to the issues in this case. That decision does not invoke the doctrine of collateral estoppel because it was based on a lack of evidence in support of the preliminary injunction application and because it did not result in a final determination as to the issues involved. The court simply concluded that there was some question regarding the debtor's likelihood of success on the

merits and an insufficient showing of irreparable injury.

■ Collateral estoppel, or issue preclusion, bars the relitigation of issues that were raised, litigated, and actually decided by a judgment in a prior proceeding. *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 2213 n. 10, 60 L.Ed.2d 767 (1979); *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). In the instant case, the previous court order did not decide the issues in question. It merely concluded that there was insufficient evidence submitted at that time to issue a preliminary injunction in an action which sought a permanent injunction. The state court did not resolve the ultimate dispute raised by the pleadings and left for trial the issue concerning the debtor's request for a permanent injunction.

### The Fence

■ There is statutory authority for the removal of a fence constructed on one's property if it deprives an adjoining property owner from enjoying the right to light or air. This statute reads as follows:

§ 843. **Fences and structures, when private nuisance**

Whenever the owner or lessees of land shall erect or shall have erected thereon any fence or structure in the nature of a fence which shall exceed ten feet in height to exclude the owner or occupant of a structure on adjoining land from the enjoyment of light or air, the owner or occupant who shall thereby be deprived of light or air shall be entitled to maintain an action in the supreme court to have such fence or structure adjudged a private nuisance. If it shall be so adjudged its continued maintenance may be enjoined. This section shall not preclude the owner or lessee of land from improving the same by the erection of any structure thereon in good faith.

N.Y. Real Property Actions and Proceedings Law § 843 (McKinney 1979). This statute does not apply in the instant case.

The debtor does not assert a deprivation of light or air and the respondent erected a chain link fence, which obviously does not deprive any adjoining land owner of light or air.

■ The common law rule applicable in New York reflects that an owner may erect on the owner's property any structure which is not *per se* a nuisance, no matter what the effect may be upon the property of the adjoining owner and regardless of the owner's motive in so doing. *Booth v. Rome, W. & O.T.R.R. Co.,* 140 N.Y. 267, 35 N.E. 592 (1893); *Saperstein v. Berman,* 219 A.D. 747, 220 N.Y.S. 163 (1927); *Malerba v. Warren,* 108 Misc.2d 785, 438 N.Y.S.2d 936 (1981), *modified,* 96 A.D.2d 529, 464 N.Y.S.2d 835 (1983); 1 N.Y.Jur.2d *Adjoining Land Owners* § 59 (1979). However, easements of light, air and view, which are not involved in this case, have been created by statute in New York pursuant to Section 843 of the New York Real Property and Proceedings Law. This statute is intended to codify the law with respect to so-called "spite fences" so as to protect an adjoining owner's right to enjoy light, air or view. Because these factors are not implicated in the instant case, the dispute must be resolved in the context of the applicable common law in New York.

■ The debtor contends that the respondent was actuated by malice in erecting the fence on the boundary line beyond the Easement Area. Apparently, the debtor believes that the respondent desires to annoy and discourage customers at the respondent's shopping center from moving freely and easily to the debtor's shopping center by compelling them to use the stairway in the Easement Area, which the customers regard as located in a dangerous and less preferable area than the blocked pathway located approximately three hundred and fifty feet away from the stairway. However, the New York courts do not regard malice alone, as a basis for an injunction.

A person may erect any structure on his property which is not per se a nuisance although it injures another and is of no substantial benefit or value to himself

and the fact that he was actuated by malice or a desire to annoy is immaterial and cannot be inquired into, usually by a court.

*Malerba*, 438 N.Y.S.2d at 942 (citation omitted).

To restrict the respondent's right to erect a fence on its property, the debtor must show that the debtor enjoys a legal right which is injured by the existence of the fence.

> The real meaning of the rule is that one may not use his own property to the injury of any *legal right of another.*

*Booth*, 35 N.E. at 594. The debtor has not shown that it has a legal right to have the gravel pathway adjacent to the respondent's private road on its property known as South Drive, continue unobstructed as an ingress and egress to and from the respondent's shopping center. There is no question that the respondent is precluded from erecting a fence on its own property in the Easement Area, where the respondent concedes that it may not block the stairway from the debtor's property to the respondent's property because of the Grant and legal rights growing out of the creation of the Easement Area.

In view of the fact that the debtor has not shown that it enjoys a legal right to use the gravel pathway on its property as an ingress or egress with respect to the respondent's shopping center, it follows that the debtor has not established that the respondent's erection of a fence on its own property outside of the Easement Area constitutes an injury to a legal right enjoyed by the debtor. Hence, the debtor has not demonstrated a likelihood of success on the merits so as to sustain the issuance of a preliminary injunction.

## CONCLUSIONS OF LAW

1.  This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(M).

2.  The debtor has not established a likelihood of success on the merits so as to justify the court's issuance of a preliminary injunction with respect to the fence erected by the respondent on its property and outside the Easement Area.

3.  The debtor's motion for a preliminary injunction is denied.

4.  The respondent's request for costs and reasonable attorney's fees is also denied.

SETTLE ORDER on notice.